UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE CLEVELAND CLINIC FOUNDATION | ) | CASE NO.: |
| 9500 Euclid Avenue | ) | |
| Cleveland, Ohio 44195, | ) | JUDGE: |
| | ) | |
| Plaintiff | ) | |
| | ) | **COMPLAINT** |
| vs. | ) | |
| | ) | |
| QUINTON D. STUDER | ) | |
| 24 Calle Hermosa | ) | **JURY TRIAL DEMANDED** |
| Pensacola Beach, Florida 32561 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BARRY G. PORTER | ) | |
| 480 East Jeter Road | ) | |
| Bartonville, Texas 76226, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, The Cleveland Clinic Foundation ("Cleveland Clinic"), for its Complaint against defendants Quinton D. Studer and Barry Graham Porter, alleges and states as follows:

THE PARTIES

1.      Plaintiff Cleveland Clinic is a non-profit Ohio corporation with its principal place of business in Cleveland, Ohio.

2.      On information and belief, defendant Quinton D. Studer is an individual residing in Pensacola Beach, Florida.

3.      Prior to October 2011 defendant Quinton D. Studer was a 70% co-owner, the founder and Chief Executive Officer of The Studer Group LLC ("The Studer Group"), which is a Florida limited liability company with its principal place of business in Gulf Breeze, Florida and a second office in Dallas, Texas.  At all times material, Quinton D. Studer and Barry Graham Porter were managing members of The Studer Group.

4765389.1

4.      On information and belief, defendant Barry Graham Porter ("Porter") is an individual residing in Bartonville, Texas.

5.      Prior to October 2011, defendant Porter was a 30% co-owner, the President, and also served as Chief Executive Officer of The Studer Group.  Subsequent to October 2011, Quinton D. Studer and Porter continued to own at least a combined 20% interest in The Studer Group.

## JURISDICTION AND VENUE

6.      This action arises under the Ohio Uniform Trade Secret Act, Ohio Rev. Code § 1333, *et seq.* including claims for misappropriation of trade secrets, the Copyright Act, 17 U.S.C. § 101, *et seq.*, and unjust enrichment.

7.      This Court has subject matter jurisdiction over the Copyright Act violations pursuant to 17 U.S.C. §§ 101, 501, and 28 U.S.C. §§ 1331, 1338, and 1400.

8.      This Court has subject matter jurisdiction over the remaining state and tort law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

9.      This Court further has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the Cleveland Clinic, Quinton D. Studer, and Barry Graham Porter are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     The Studer Group consented to personal jurisdiction in this District when it filed suit against the Cleveland Clinic in Case No. 1:10-CV-01957, currently pending before the Honorable Christopher A. Boyko.

4765389.1

11.     At the time The Studer Group filed suit in this District, it was wholly-owned by Quinton D. Studer and Barry Graham Porter, and filed suit at their direction as owners, members, and officers.

12.     This Court has personal jurisdiction over Quinton D. Studer and Barry Graham Porter as each conducts business within the State of Ohio and within this judicial district through The Studer Group for which each is and at all relevant times have been co-owners, members, and officers, with the ability and authority to and did, supervise the unlawful conduct, have a financial interest in the unlawful conduct, and participate in the unlawful conduct within this District.

13.     Venue is proper in this district for these claims pursuant to 28 U.S.C. § 1391.

FACTUAL BACKGROUND

14.     The Cleveland Clinic repeats and incorporates by reference all of the allegations set forth in paragraphs 1-13 of these claims.

15.     In 2002, the Cleveland Clinic created a system and software program called the *Patient Callback System*, which it used to automate the process of making calls to patients.

16.     On or about February 2003, Quinton D. Studer first learned of the Cleveland Clinic's *Patient Callback System*.  In a March 3, 2003 e-mail, Quinton D. Studer and The Studer Group admitted that there was not a system like the Cleveland Clinic's *Patient Callback System* on the market.  In the same e-mail, Quinton D. Studer and The Studer Group advised the Cleveland Clinic to "ensure its copyright/ownership."

17.     The Studer Group encouraged the Cleveland Clinic to create a manual for making patient calls, which it did, so that The Studer Group could then market and sell the *Patient Callback System* and manual in a strategic agreement with the Cleveland Clinic.

4765389.1

18.     On or about August 2004, the Cleveland Clinic provided The Studer Group with confidential copies of the *Patient Callback System* software program, source code, and manual. The Studer  Group agreed to keep this information strictly confidential.  By this time, the name of the software had been changed to *Discharge Call Manager*.

19.     The Cleveland Clinic continued to make changes and improvements to the *Discharge Call Manager* system and software program, and provided confidential copies of the same to The Studer Group.

20.     As of January 30, 2006, the Cleveland Clinic and The Studer Group entered into a written Strategic Alliance Agreement, which was later amended as of May 8, 2006.  Both the Strategic Alliance Agreement and the later Amendment ("Agreement") were signed by Porter acting as President of The Studer Group.  Quinton D. Studer was aware of and approved of the Strategic Alliance Agreement.

21.     Under the Agreement, The Studer Group was to act as the exclusive distributor to market, distribute, license, and service the *Discharge Callback Program* and system, known as the *Discharge Call Manager*, during the term of the Agreement.

22.     The  Agreement provided, in relevant part, for the following:

  a.  The Studer Group was not permitted to distribute the *Discharge Call Manager* or permit a customer to use the system and software without first obtaining a signed End User License Agreement ("EULA") in the form approved by the Cleveland Clinic (Section 4).

  b.  "CCF [Cleveland Clinic Foundation] Intellectual Property" is defined as "all inventions, improvements or discoveries . . . which are conceived or made solely

4

by one or more employees of CCF under the Agreement.  All rights and title to CCF Intellectual Property shall belong to CCF . . ." (Section 8.1).

c.  "Joint Intellectual Property" is defined as only those "inventions, improvements or discoveries . . . which are made jointly by one or more employees of Studer and one or more employees of CCF . . .  All rights and title to Joint Intellectual Property shall be jointly owned by Studer and CCF" (Section 8.1).

d.  The Studer Group will not license the System to new Customers after the delivery of notice of termination of this Agreement pursuant to Section 3 (Section 10).

e.  The Studer Group shall not make, sell, license or distribute any modifications or improvements to the System which affect the System as delivered to The Studer Group (Section 12).

f.  The Studer Group will not knowingly maintain or support software which has been modified or converted without the Cleveland Clinic's prior authorization (Section 12).

g.  The Studer Group agrees that all marketing efforts and all documentation related to the System shall state that the System is the property of the Cleveland Clinic (Section 13).

h.  The Studer Group agrees that all confidential information received from the Cleveland Clinic is and shall remain the property, trade secret, and confidential information of the Cleveland Clinic (Section 18).

23.  The Agreement terminated by its own terms on January 30, 2009.

24.  In early 2010, the Cleveland Clinic discovered that The Studer Group was marketing and selling a system and software program under the name *Patient Call Manager*.

5

4765389.1

The *Patient Call Manager* is substantially similar to the Cleveland Clinic's *Discharge Call Manager* system and program, and uses the Cleveland Clinic's trade secrets.

25.     On information and belief, The Studer Group has informed potential customers that the Cleveland Clinic's *Discharge Call Manager* is no longer available and then marketed the *Patient Call Manager* to those same potential customers.  Defendants approved and directed these actions.

26.     On information and belief, Quinton Studer and Porter in their capacity as co-owners, members, and officers of The Studer Group, directed and participated in the creation, marketing, distributing, and selling of the *Patient Call Manager* system and software program.

## COUNT I
## TRADE SECRET MISAPPROPRIATION

27.     The Cleveland Clinic repeats and incorporates by reference all of the allegations set forth in paragraphs 1-26 of these claims.

28.     The Cleveland Clinic's *Discharge Call Manager* system and software program constitute trade secrets under Ohio Rev. Code § 1333.61(D), as they contain information, designs, and processes that derive independent economic value from not being generally known to or readily available by proper means to other persons who can obtain economic value from their disclosure, and reasonable efforts are undertaken to maintain their secrecy.

29.     These trade secrets were disclosed to Defendants and The Studer Group under implicit and explicit restrictions with respect to their disclosure.  Defendants and The Studer Group were required to maintain the confidentiality of the Cleveland Clinic's *Discharge Call Manager* system and software program, and could only distribute or disclose it to customers that first entered into an End User License Agreement ("EULA") approved by the Cleveland Clinic, which included obligations of confidentiality and non-disclosure.

6

30.     These trade secrets were not known by those other than parties that were obligated to maintain the trade secrets and to guard against the secrecy of the information contained therein.

31.     The Studer Group used the Cleveland Clinic's trade secrets in its *Discharge Call Manager* system and software program, without the Cleveland Clinic's authorization, to create its infringing *Patient Call Manager* system and software program.

32.     The Studer Group disclosed the Cleveland Clinic's trade secrets without authorization by marketing, selling, and disclosing its infringing *Patient Call Manager* system and software program to customers without first obtaining the necessary obligations of confidentiality and non-disclosure.

33.     The Studer Group has marketed, sold, and disclosed the Cleveland Clinic's *Discharge Call Manager* system and software program to customers without first obtaining a signed EULA from each customer containing the required obligations of confidentiality and non-disclosure.

34.     The Studer Group knew or had reason to know that the Cleveland Clinic's proprietary trade secrets were being improperly used and disclosed by virtue of its foregoing actions.

35.     Quinton D. Studer and Porter in their individual capacity as co-owners, managing members, and officers of The Studer Group, conspired with The Studer Group and directed, participated in and ratified the creation, marketing, distribution, and selling of the infringing *Patient Call Manager* system and software program, including those actions described herein.

36.     On information and belief, Quinton D. Studer and Porter were, at all relevant times, owners, managing members, and officers of The Studer Group with dominant influence in

7

the limited liability company, and determined the policies which resulted in the trade secret misappropriation, and therefore are jointly and severally liable as tortfeasors with The Studer Group.

37.     The Cleveland Clinic is entitled to damages that include both its actual losses and any unjust enrichment of Quinton D. Studer and Porter caused by the misappropriation not taken into account in computing the Cleveland Clinic's actual loss.  Ohio Rev. Code § 1333.63(A).

38.     The Cleveland Clinic is also entitled to punitive damages in an amount up to three times its damages and its attorneys' fees as the trade secret misappropriation, directed and supervised by Quinton D. Studer and Porter, was willful and malicious.  Ohio Rev. Code §§ 1333.63(B) and 1333.64(C).

## COUNT II
## COPYRIGHT INFRINGEMENT

39.     The Cleveland Clinic repeats and incorporates by reference all of the allegations set forth in paragraphs 1-38 of these claims.

40.     The Cleveland Clinic's *Discharge Call Manager* software program is wholly original material, which is copyrightable subject matter pursuant to 17 U.S.C. § 101, *et seq.* (the "Copyright Act").

41.     The Cleveland Clinic complied with the Copyright Act and secured the exclusive rights in and to the copyrights in the *Discharge Call Manager* software program.  The Cleveland Clinic's copyright registration No. TXu001679126 was registered on September 20, 2010 with the U.S. Copyright Office.  Accordingly, the Cleveland Clinic is the owner of all right, title, and interest in and to the copyrights in the *Discharge Call Manager.*

42.     The *Discharge Call Manager* software program was provided to The Studer Group under explicit and implicit restrictions with respect to its disclosure, therefore it was and

8

remains an unpublished work. Because registration was made before any publication, the Cleveland Clinic's copyright registration constitutes *prima facie* evidence of the validity of the copyright and of the facts stated in the registration certificate. 17 U.S.C. § 401(c).

43.     Upon information and belief, The Studer Group copied substantial amounts of copyrighted subject matter from the Cleveland Clinic's *Discharge Call Manager* software program when creating its own *Patient Call Manager* software program.

44.     The Studer Group's acts of copying the *Discharge Call Manager* were and are unauthorized by the Cleveland Clinic.

45.     Upon information and belief, The Studer Group's unauthorized copying of the *Discharge Call Manager* constitutes copyright infringement by reproducing the copyrighted works, preparing one or more derivative works based upon the copyrighted works, and distributing copies of the copyrighted works.

46.      Quinton D. Studer and Porter in their individual capacity as co-owners, managing members, and officers of The Studer Group, directed and participated in the creation, marketing, distributing, and selling of the infringing *Patient Call Manager* system and software program.

47.     On information and belief, Quinton D. Studer and Porter were, at all relevant times, owners, managing members, and officers of The Studer Group with dominant influence in the limited liability company, and determined the policies which resulted in the infringement, and therefore are jointly and severally liable as tortfeasors with The Studer Group.

48.     As a result of the infringement, the Cleveland Clinic is entitled to recover damages, which include its losses and any and all profits earned by Quinton D. Studer and Porter as a result of their wrongful conduct pursuant to 17 U.S.C. § 504.

4765389.1

## COUNT III
## CONSTRUCTIVE TRUST AND UNJUST ENRICHMENT

49.    The Cleveland Clinic repeats and incorporates by reference all of the allegations set forth in paragraphs 1-48 of these claims.

50.    Defendants have benefited, and continue to benefit, from their wrongful conduct and they have been unjustly enriched.

51.    Defendants have caused immediate, substantial, ongoing and irreparable injury to the Cleveland Clinic.

52.    This Court should impose a constructive trust for the benefit of the Cleveland Clinic on all monies directly or indirectly received by defendants as a result of their wrongful actions.

## PRAYER FOR RELIEF

WHEREFORE, The Cleveland Clinic Foundation prays for entry of judgment in its favor and against Defendants Quinton D. Studer and Barry Graham Porter as follows:

1.    An award to the Cleveland Clinic of all statutory damages, compensatory damages, defendants' profits, unjust enrichment, punitive damages, and restitution to which it is entitled, in an amount to be proven at trial, caused by defendants misappropriation of trade secrets and copyright infringement, including both pre-judgment and post-judgment interest.

2.    An award to the Cleveland Clinic of its costs and attorneys' fees.

3.    A permanent injunction freezing and imposing a constructive trust upon monies received by defendants directly or indirectly through their wrongful actions, including but not limited to amounts at least equal to the value attributed to the Patient Call Manager system and software program in the recapitalization of The Studer Group in October 2011.

10

4765389.1

4.      An award of all such other and further relief, at law or equity, as the Court shall

deem just.

Respectfully submitted,


OF COUNSEL:                                   /s/Robert J. Fogarty
                                              Robert J. Fogarty (0006818)
HAHN LOESER & PARKS LLP                       rjfogarty@hahnlaw.com
                                              R. Eric Gaum (0066573)
                                              regaum@hahnlaw.com
                                              200 Public Square, Suite 2800
                                              Cleveland, OH 44114-2316
                                              Phone:  (216) 621-0150
                                              Fax:  (216) 241-2824

                                              *Attorneys for Plaintiff*
                                              *The Cleveland Clinic Foundation*


## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, The Cleveland Clinic

Foundation requests a trial by jury of all issues so triable in this action.

4765389.1